### NATHANIEL PINGREY *v.* JOEL G. WATKINS.

A landlord may declare against an assignee of his lessee, for a share of the rent reserved in the lease, proportioned to the relative value of the part held by assignment.

*Quære*—Whether, upon an allegation that all the estate, interest, &c. of the lessee came by assignment, to the defendant, proof that part only of the leasehold premises was assigned, is a variance.

A reversionary estate in fee, and a particular estate for life or years, may be conveyed by the same deed.

C. W. received from N. P. and his wife, widow of E. W., a lease during her life, of all the estate set off to her as dower, from the estate of E.

W., which consisted of certain buildings, and 37 acres of land. The estate of E. W. had been assigned to E. W. the younger, who had deceased, leaving the said C. W. and five other children; and the reversion of said buildings had been assigned, by a committee, to C. W. and of the 37 acres, to the said other five children. C. W. executed a deed to to J. W. conveying all his right, title, &c. in the buildings and land on which they stood, as "described by the doings of the committee on record," and also, "one other piece set off by said committee of *the reversion* of the widow of E. W.;" and it was proved that the land assigned as *dower* to said widow, had been known in the family, and acquired the name of the *reversion*, and was so denominated in the partition among the heirs of E. W. the younger. *Held*—That "the *reversion*," must be taken to mean the *dower*, of said widow, and, therefore, that the conveyance to J. W. embraced the leasehold interest of C. W. in the 37 acres, so as to hold J. W. for the payment of rent thereon, as assignee of C. W.

THIS was an action of covenant broken, for non-payment of rent, in which the plaintiff declared, that on the 13th of February, 1833, he, with his wife, Rebecca Pingrey, executed to Charles W. Watkins, his heirs and assigns, for and during the natural life of said Rebecca, a lease of "all ' that certain part of the real estate of Elias Watkins, senior, ' late of Chester, deceased, that was set off to said Rebecca, ' as widow of the deceased, as her thirds, lying and being ' in Chester aforesaid, together with the buildings thereon, ' as set to her by a committee appointed for that purpose," &c.; that said C. W. Watkins, for himself, his heirs and assigns, covenanted, in said lease, to pay the said Pingrey and wife, as rent for said premises, the sum of $42.50 per annum, on the first day of April annually; that said C. W. Watkins entered into possession of the premises under said lease, and that on the 8th of February, 1840, "all the es- ' tate, right, title, interest, term, then to come and unexpired, ' &c. of, in and to the said demised premises, with the ap- ' purtenances, by assignment thereof, then and there legally ' made, came to, and vested in, the said Joel G. Watkins;" that the defendant entered upon the possession of the premises, under said assignment, and continued thereof possessed, until the decease of said Rebecca, on the 5th of July, 1840, and that the defendant had not paid the rent due for said premises on the 1st of April, 1840.

The defendant pleaded that the right, title, &c. of the said C. W. Watkins did not come to, and vest in, him by

assignment as alleged, and that he had not been possessed thereof. Issue joined to the country.

The plaintiff read in evidence an assignment of dower to the said Rebecca in the estate of the said Elias Watkins, senior, made in April, 1814, by which it appeared that said dower consisted of 37 acres and 72 rods of land, and also certain parts of the dwelling house, and barn, and other out-buildings of the estate of which said Elias died seized.

The plaintiff also read in evidence an assignment of the remainder of said estate to Elias Watkins, the younger; and, also, the partition of the estate of said Elias, the younger, deceased, in April, 1827, among his six children—among whom were the said Charles W. Watkins and Joel G. Watkins—by which it appeared that the house and other buildings, mentioned in the assignment of dower to the said Rebecca, were on the land assigned to the said Charles W.

It appeared that, in the partition of the estate of Elias Watkins, the younger, among his children, the reversion of said Rebecca's dower was divided into six parts, one of which consisted of her right in said buildings, and was assigned to the said Charles W.; and that the 37 acres and 72 rods of land constituted the other five parts, and were divided among the other five children of the said Elias.

It also appeared that the use of said Rebecca's part of said buildings was worth as much, per annum, as the use of the land constituting the rest of her dower.

The plaintiff also read in evidence the lease of plaintiff and wife to C. W. Watkins, of the premises in question, and also the deed of assignment of said Charles W., to the defendant, of the tenor following :—

" Know all men by these presents, that I, Charles W. " Watkins, of, &c., for, and in consideration of the sum of ' $365 to me in hand paid by Joel G. Watkins of, &c., have ' remised, released, and by these presents, for me and my ' heirs, do remise, release, and forever quit claim, unto the ' said Joel G. Watkins, his heirs and assigns, forever, all the ' right, title, interest, property estate and demand, which I, ' the said Charles W., have in and to certain tracts, pieces ' and parcels of land, lying and being in Chester aforesaid, ' described as follows, to wit,—all that certain piece of land ' set to me as my share of the home farm of my late father

Windsor, *February,* 1843.

Pingrey *v.* Watkins.

' Elias Watkins, deceased, as the same is described by the ' doings of the committee on record, in Chester land records, ' having reference to the said records, for the bounds thereof. ' *Also, one other piece, set off by said committee, of the re-* ' *version of the widow Rebecca Howe, late widow of Elias* ' *Watkins, the elder, deceased, having reference to the records* ' *aforesaid, for the particular bounds thereof.* Also, all my ' right, title or share of the reversion of the thirds set off to ' the widow Sally Watkins, of the estate of my said father," &c. "To have and to hold the said premises with all the ' privileges and appurtenances," &c.

There was no proof that the defendant had ever claimed or possessed, any of what was the said Rebecca's dower, until after her decease.

The plaintiff also gave evidence tending to prove, that the land so assigned to said Rebecca, as dower, was known in the family, and had acquired the name of " the reversion," and was so denominated in said partition among the heirs of Elias Watkins, the younger.

Upon this testimony the plaintiff insisted, that the right, title, &c., of the said Charles W. came to the defendant by assignment, and that he, the plaintiff, was entitled to recover, either in whole or in part. But the court instructed the jury that, upon the plaintiff's testimony, it did not appear that the defendant was the assignee of the said Charles W., and that the plaintiff was not entitled to recover, in whole or in part, on his declaration ; to which the plaintiff excepted.

*R. Washburn,* for plaintiff.

The leading question in this case is whether Charles W. Watkins did, by the deed of the 8th of February, 1840, assign to Joel G. Watkins the estate which he held in the dower of the said Rebecca, by virtue of said lease. The plaintiff insists that he did. By that deed he remised, released, &c. to Joel G. Watkins, his heirs, &c. all the right, title, &c. which he had in and to all the land set to him as his share of the home farm of his late father, Elias Watkins, deceased, &c. This is the land on which are the house and buildings mentioned in the assignment of dower to the said Rebecca, and the only land set off to Charles W. in the division of his father's estate ; and the case finds that the said

WINDSOR,
*February,*
1843.

Pingrey
*v.*
Watkins.

house and buildings were on the land set off to the said Charles in said division.

The second piece of land contained in the deed is described as follows, to wit: "Also one other piece set off by said committee of the reversion of the widow Rebecca Howe, late widow of Elias Watkins, the elder, deceased, having reference to the records aforesaid, for the particular bounds thereof."

This, the plaintiff insists, is the 37 acres and 72 rods of land assigned to the said Rebecca, as part of her dower, and included in the lease to Charles W.; and the word "reversion" is used to designate the piece of land, and not any reversionary interest in it; for the case shows that the plaintiff gave evidence tending to prove, that the 37 acres and 72 rods of land, so assigned to the said Rebecca, was known in the family, and had acquired the name of the "Reversion," and was so called in said partition; and the case also finds, that the reversionary interest in the said 37 acres and 72 rods of land was set off to the other five children of Elias Watkins, the younger, and that Charles W. had no interest in it, except what he held by virtue of the lease.

The description of this land commences with "*one other piece.*" This cannot mean the piece of land on which the buildings are, for the case shows that the buildings were on the first described piece set off to Charles W. It continues— "*Set off by said committee.*" It does not say, set off by said committee to Charles W. Watkins, as in the description of the first described piece. The 37 acres and 72 rods of land of the said Rebecca's dower was "set off by said committee" to the other five children. Then follows—"*Of the reversion of the Widow Rebecca Howe, the late widow of Elias Watkins, the elder, deceased.*" After describing the first mentioned piece, this expression could apply to no other than the piece of 37 acres and 72 rods. The said Charles W., also, conveyed all his undivided share of the reversion of the thirds, set off to his mother, the Widow Sally Watkins.

These three pieces are the only parcels of land in which the case shows that Charles W. had any interest; and he conveyed, by said deed, all his right, title, &c. in these pieces, which necessarily includes the interest and estate

which he held in the two first mentioned pieces by virtue of the lease.

But the case states, that there was no proof that the defendant had ever claimed or possessed any of what was the said Rebecca's dower, until after her decaase. It does not, however, state that there was positive proof that he did not; neither does the case show that he claimed or possessed *any part* of the premises contained in the deed, till after the death of said Rebecca, except by causing the deed to be recorded in the land records of Chester, the day it was executed, which gave him the possession, in law, of the whole premises contained in the deed. The covenant to pay rent runs with the land; and the assignee is liable for any breach of it that happens after the assignment, though he have not taken possession of the premises. 1 Saund. R. 241, n. 6; 1 Chit. Pl. 35, 36; 2 Saund. Pl. & Ev. 628; *Williams* v. *Bosanquet*, 5 Eng. C. L. R. 72.

I. The plaintiff contends, that the court erred in instructing the jury, " that, upon the plaintiff's testimony, it did not appear that the defendant was assignee of said Charles W., and the plaintiff was not entitled to recover." Whether the defendant was assignee of Charles W., and entitled to recover, was a question partly of law, and partly of fact; and the court, after instructing the jury relative to the law, ought to have left the facts wholly to the jury. But the court charged that the plaintiff was not entitled to recover—which was erroneous, if the plaintiff's testimony tended to prove that the defendant was the assignee of the said Charles. *Rogers* v. *Judd & Harris*, 6 Vt. R. 191; *St. Albans Steam Boat Co.* v. *Wilkins*, 8 Vt. R. 54.

II. The plaintiff insists, that the case shows, incontrovertibly, that the defendant was assignee of Charles W. in respect to that part of the buildings contained in the lease to him; and that the present use of that part of said buildings was worth as much, per annum, as the use of the land contained in the lease. The plaintiff, therefore, contends that he was entitled to recover, *pro tanto*, even if he was not entitled to recover for the whole; and that the court erred in charging the jury, " that the plaintiff was not entitled to recover in whole, or in part." 2 Saund. R. 182, n. 1; 2 Saund. Pl. & Ev. 628; *Stevenson* v. *Lambard*, 2 East, 575.

*Kellogg* and *Richardson*, for defendant.

I. From the facts in the case, it does not appear that the defendant is assignee of Charles W. Watkins, the plaintiff's lessee.

1. The second clause in the deed only conveys to the defendant the share in the buildings, &c., " set off " to Charles W. Watkins, *from* the widow Rebecca's dower, (" the Reversion," ) by the committee appointed by the probate court for the division of the estate of Elias Watkins, the younger, among the heirs; being one-sixth part of the widow's dower; and cannot be presumed to convey the interest of the said Charles W. in the other five parts of the widow's dower.

2. We insist the reversionary interest of Charles W. Watkins in the estate, in- the clause above referred to, is only conveyed, and is particularly described by the reference in said clause to the doings of the committee.

3. The acts of the parties, as stated in the bill of exceptions, sustain the construction contended for by the defendant. He never took possession, or claimed any part, of the premises, till after the death of the widow Rebecca.

II. Should the court be of the opinion that part only of the said Charles W.'s leasehold interest was assigned to the defendant, the plaintiff is not entitled to recover in this action. *Hare* v. *Cator*, 2 Cowp. 766; *Fulton* v. *Stuart*, 1 Ohio R. 369; 1 Wheat. Selw., 5th Am. edition, 494, 499, (note 1); *Halford* v. *Hatch*, 1 Doug. 183; *Jaques* v. *Eaton*, 2 do. 454; 1 Hilliard's Abridgment, 126; 2 Saund. Pl. & Ev. 627; 5 Wend. R. 614; 9 Cowen, 88.

The opinion of the court was delivered by

Royce, J. — The case must turn upon the effect, and operation, of the deed from Charles W. Watkins to the defendant. A question is made in the argument, whether that deed operated at all upon the leasehold interest of the grantor. It was a deed of release and quitclaim, in common form, of all the grantor's " right, title, interest, property, estate and demand, in, and to, certain tracts, pieces and parcels of land," &c. And, according to the operation always given to this species of conveyance, in Vermont, every estate and interest which the grantor had in the lands described,

must be taken to have passed to the defendant under these sweeping and unqualified expressions. But the case finds that the tract first described in the deed, namely, the share set to Charles W. Watkins, in the estate of his late father, included a part of the premises previously assigned in dower to Rebecca Watkins; and that portion of the dower must, therefore, have been embraced in the lease from the plaintiff and his wife to said Charles W. It follows, that so far, at least, the deed to the defendant did operate to pass the lease-hold interest of Charles W. Watkins. A reversionary estate in fee, and a particular estate for life, or years, may well be conveyed by the same deed, if the terms of the conveyance are sufficiently comprehensive and appropriate for such a purpose. *Burton* v. *Barclay*, 7 Bing. 745.

Admitting, for the present, that the deed had no farther operation upon the leasehold estate, or did not convey the whole of it, it still operated as an assignment, *pro tanto*, and would regularly subject the defendant, for rent subsequently falling due. It has, indeed, been truly said, that the liability of the assignee, to the obligations created by the original lease, results from privity of estate, and not alone from privity of contract, like the obligations of the immediate parties to the lease; and that if the assignee acquires but a part of the premises demised, the privity of estate between him and the lessor is limited accordingly. But to admit, as a conclusion from this, that he is not liable in debt, or covenant, for rent becoming payable whilst he holds under the assignment, would be to enable the tenant greatly to abridge the remedies of his lessor, by assigning the premises in parcels to different persons. There may be a doubt, ( which we have not found it necessary, in this case, to solve ) whether the whole rent may be declared for against such an assignee, leaving him at liberty to defend in reference to his part of the premises, or to plead in abatement the non-joinder of other persons liable, according to the intimations in 1 Saund. R. 519, note; 5 B. & C. 482; 2 Chit. Pl. 552, note; Saund. Pl. &. Ev. 623, 625; or whether a part only should be demanded, on the principle of apportionment. It is familiar law, that rent may be apportioned, though this is generally spoken of as the result of some act on the part of the lessor, or of a stranger. It happens when the lessor grants the re-

version of part of the land, out of which the rent issues, or grants part of the rent to one person, and part to another. So when a stranger evicts the tenant from a part of the land by paramount title. 5 B. & A. 876; 3 Kent's Com. 469; 2 East. R. 576; 2 Wend. R. 561; 1 Sw. Dig. 574. In the cases first put, the tenant comes to have two landlords instead of one. This results from the nature of covenants running with the land, or covenants annexed to the tenure, as they are sometimes called. They attend, and follow, the estate, as accessories or incidents to it; and if that becomes divided, or apportioned, the covenants become so likewise. Covenants of this kind, on the part of the lessor, equally pass to the assignee of the lessee. And it is advanced as clear law, by Hammond on Parties, 120, that such an assignee of part of the premises leased, is entitled to his suit on the lessor's covenants, upon the like principle of apportionment. The author pertinently asks — " what reason exists for distinguishing between him and the lord's assign? " Though I have found it no where expressly laid down, that apportionment of rent can be brought about by the act of the lessee, or those claiming under him, yet such a consequence would seem to flow from the nature of these annexed covenants, as also to be implied in the reasoning of court and counsel in several of the cases, especially in *Hare* v. *Cator*, 2 Cowp. 766. It might be added, that justice to the assignee would appear to suggest a rule, which should measure the extent of his liability, by that of his privity of estate. From all this, I conclude, that the landlord *may* declare against such an assignee, ( without undertaking to say whether he *must* ) for a share of the rent, proportioned to the relative value of the part which he holds by assignment.

The next objection proceeds upon the same construction of the deed to the defendant, by supposing it not to convey the whole of the leasehold estate. Upon such a construction of the deed, the averment in the declaration, that all the estate, &c., came to the defendant by assignment, is not literally satisfied by the proof. And this is urged as a fatal variance. The allegation should, doubtless, be understood to mean, not only an assignment of the whole estate *in quantity of interest*, but of that estate *in all the land*. Most of the cases upon the effect of such an allegation, have related to the for-

mer sense in which it is here used. And it is well settled that the lessee's whole estate and interest, *in the premises assigned*, must pass to the assignee. Without this there can be no legal assignment, but at most, an under-lease, or a conveyance in the nature of one. On this distinction the cases of *Halford* v. *Hatch*, 1 Doug. 183, and *Eaton* v. *Jaques*, 2 Doug. 455, were decided. It was even held in the latter case that, though the whole legal interest did pass to the assignee, yet if it was defeasible, as by way of mortgage, it was not such an assignment as would subject the assignee for rent, unless he had taken possession before the rent claimed had become payable. But subsequent cases have applied the language of Ld. Mansfield, in *Walker* v. *Reeves*, 2 Doug. 461, note, that — " By the assignment the title and possessory right passed, and the assignee became possessed in law ; and the doctrine of *Eaton* v. *Jaques* has, accordingly, been overruled. *Williams* v. *Bassanquet*, 1 B. & B. 238 ; *Burton* v. *Barclay*, before cited ; *Haig* v. *Harmon*, 4 Bligh. 380. It is only as to the effect of the allegation in the latter sense above stated, that the present question arises. There are grounds for requiring exact proof of the allegation in the former sense, which do not apply here. When an assignment is alleged, that term is understood in its legal acceptation, which, as I have already shown, imports a conveyance of the whole estate in the premises assigned, but does not require a conveyance or assignment of all the leasehold premises. Neither are the covenants transmitted with the land, unless the same estate is assigned to which they were annexed. But an assignment of all the premises is not required for this purpose, because the covenants, like other accessories, " will shape and conform themselves to the accidents of their principal. " Ham. P. 119. The question, then, is, whether the allegation, so far as it imports an assignment of all the premises, should be regarded as matter of description, and, therefore, to be strictly proved as laid, or like other allegations of number or quantity, which usually do not require proof to the full extent alleged. Here, again, the authorities are conflicting. In one of the cases, at least, to which we have been referred, (and I have not consulted all the others,) the allegation, the plea, and the issue tried, were the same as in this case ; and it appeared that one tract, contained in the

lease, was omitted in the assignment. This was held to be a fatal variance. *Hare* v. *Cator*, 2 Cowp. 766. On the the other hand, it has been more recently said, that this general allegation will suffice, though the assignment is of part, only, of the premises leased. 5 B. & C. 482 ; Chit. Pl. and Saund. Pl. and Ev., as before cited. I should incline to the latter opinion, especially, as the landlord is not presumed to have accurate knowledge of the transfers and assignments made by his tenant. But this point may be passed without further remark, as the case is decided on another ground.

It remains to be determined, whether the deed to the defendant did actually include all the leasehold premises ; in other words, all the premises assigned in dower to Rebecca Watkins, one of the lessors. Her dower consisted of certain portions of the buildings and privileges of the mansion-house, and a tract of 37 acres on the west side of the farm. The reversion of this dower was, afterwards, divided into six parts, in the division of the farm, upon the death of Elias Watkins, the younger. Charles W. Watkins, the plaintiff's lessee, took it in the buildings, where his portion of his father's estate was located, and his five brothers and sisters took it in the 37 acres ; which, for that purpose, was divided into five distinct parts or lots. The deed in question is to be construed with a due reference to this condition of things. It professes to convey the share set to the grantor in the division of his father's estate, referring to the report of the committee of division, on record, for bounds, &c., — his share in the reversion of the land, of which his father's widow was endowed, — and "one other piece, set off by said 'committee, of the reversion of the widow Rebecca Howe, 'late widow of Elias Watkins, the elder, deceased, having 'reference to the records aforesaid, for the particular bounds 'thereof." Now it does not appear that Charles W. Watkins had any interest in either of the lots, into which the 37 acres was divided, except his leasehold estate, which extended through the whole of it. Hence, the deed is apparently inapplicable to anything but the entire 37 acres, which was truly "of the dower of Rebecca Watkins," not being the whole of it. And though the word "reversion" is used, instead of dower, the latter is obviously intended ; for the widow had dower but no reversion. If the grantor meant

WINDSOR,
February,
1843.

one of those lots in the subdivision, which was it? The whole difficulty evidently arises from an improper reference to the committee, as also to the records. "Said committee" would literally refer to the committee who divided the estate of the 2d Elias Watkins; whereas, the committee upon the estate of the elder Watkins must have been intended. The same may be said of "the records aforesaid." This part of the deed must be senseless and inoperative, unless we apply it to the subject matter which the parties apparently had in view, regardless of these accidental repugnances. As said by Ld. Mansfield in one of the cases cited, — "To do justice between men, it is necessary to understand things as they really are, and construe instruments according to the intent of the parties." We think that this part of the deed should have its application to the whole 37 acres. The result is, that the defendant acquired the whole leasehold estate, and the plaintiff was entitled to the whole rent demanded.

The judgment of the county court is, therefore, reversed.